UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SARAH STANSBURY,<br><br>               Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>the Social Security Administration,<br><br>               Defendant. | CASE NO. 10-cv-05767 BHS JRC<br><br>REPORT AND<br>RECOMMENDATION ON<br>PLAINTIFF'S COMPLAINT<br><br>NOTED FOR: January 27, 2012 |

     This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (<u>See</u> ECF Nos. 20, 21 and 22).

     Based on the relevant record, the Court concludes that the ALJ erred at step two of the sequential analysis by failing to consider properly plaintiffs impairments of bursitis and piriformis syndrome and that he erred by failing to evaluate properly the medical evidence provided by plaintiff's treating physician. For these reasons, this matter should be reversed and

remanded pursuant to sentence four of 42 U.S.C. §405(g) to the Commissioner for further administrative proceedings.

## BACKGROUND

Plaintiff SARAH L. STANSBURY was 26 years old on her alleged disability onset date of February 20, 2007 (Tr. 136). She has a high school diploma and completed one quarter of classes at Clark College (Tr. 169). Plaintiff was the victim of severe abuse and neglect by her mother at a very early age (Tr. 1057). Plaintiff was removed from her mother's home and lived with her father and stepmother, where she was subject to numerous acts of physical and mental cruelty (Tr. 1057). As a result of these early experiences and others, plaintiff was diagnosed with PTSD and major depression in 1995 and again in 2008 (Tr. 382-88).

Plaintiff suffered from various other physical problems, including sciatica (Tr. 304, 312, 440) and endometriosis, which caused severe abdominal pain and irregular, heavy menses (Tr. 337).

In 2006, plaintiff fell while she was working at McDonald's (Tr. 323). She had continuing back problems (Tr. 356). In 2007, an MRI showed mild disc desiccation at L5-S1 and posterior margin osteophyte formation that caused mild foraminal stenosis (Tr. 257).

Plaintiff's back pain continued and worsened following the birth of her daughter (Tr. 331). She reported hip pain (Tr. 331), and lumbar pain radiating down her legs (Tr. 323). These resulted in a number of functional limitations (Tr. 323). She has been treated with physical therapy (Tr. 316), home exercise program and a TENS unit (Tr. 318) and has been prescribed , along with muscle relaxants, narcotic pain medications, epidural steroid injections and nerve root block injections ( see, e.g., Tr. 285, 316, 470). She was diagnosed with left trochanteric bursitis (hip bursitis) in March of 2008 (Tr. 824). This diagnosis continued to be recognized through

February of 2009 ( see, e.g., Tr. 744, 769, 773).  Her low back pain also was described with a diagnosis of piriformis syndrome (Tr. 744, 773), which can mimic a diskogenic sciatica, and is usually caused by a neuritis of the proximal sciatic nerve (see ECF No. 20, pg. 8, note 3).

## PROCEDURAL HISTORY

On December 28, 2007, plaintiff filed an application for social security disability benefits and supplemental security income (Tr. 35).  In both applications, plaintiff's alleged disability began on February 20, 2007.  Id.  Her application was denied initially and following reconsideration on August 6, 2008.  Id.  Plaintiff's requested hearing was held before Administrative Law Judge Dan R. Hyatt ("the ALJ") on January 4, 2010.  On March 19, 2010, the ALJ issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act from February 20, 2007 through the date of his decision (Tr. 35).

On August 20, 2010, the Appeals Council denied plaintiff's request for review (Tr. 1), making the written decision by the ALJ the final agency decision subject to judicial review. See 20 C.F.R. § 404.981.  Plaintiff now brings this action seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1381-83.

In her Opening Brief, plaintiff contends that:

(1) The ALJ failed to consider plaintiff's claimed piriformis syndrome and improperly found plaintiff's hip impairment "not severe" at step 2 of the evaluation;

(2) The ALJ failed to properly evaluate the medical evidence from a treating providers and another evaluating specialist;

(3) The ALJ failed to give legally sufficient reasons for rejecting lay witness evidence.

1  Plaintiff contends that this matter should be remanded for further consideration (see ECF
2  No. 20, p. 19).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the

administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." Stout, supra, 454 F.3d at 1054 (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. Stout, supra, 454 F.3d at 1054-55 (reviewing legal errors found to be harmless).

DISCUSSION

1. The ALJ erred at step-two in failing to consider plaintiff's piriformis syndrome and his failure to evaluate properly plaintiff's left hip bursitis.

Step-two of the administration's evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of impairments."

Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The ALJ "must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." Smolen, supra, 80 F.3d at 1290 (citations omitted). The "step-two determination of whether a disability is severe is merely a threshold determination of whether the claimant is able to perform his past work." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007). Therefore, a finding that the disability of a claimant "is severe at step-two only raises a prima facie case of a disability." Id. (*citing* Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999)).

An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" Smolen, supra, 80 F.3d at 1290 (*quoting* Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)). The step-two analysis is "a *de minimis* screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (*citing* Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)).

According to Social Security Ruling 96-3b, "[a] determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairments(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR 96-7p); see also Slayman v. Astrue, 2009 U.S. Dist. LEXIS 125323 at *33-*34 (W.D. Wa. 2009). If a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." Bowen, supra, 482 U.S. at 146. Plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity and that this impairment lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a), 416.912(a); Bowen, supra, 482 U.S. at 146; see also Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) (*citing* Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995)). It is the claimant's burden to "'furnish[] such medical and other evidence of the existence thereof as the Secretary may require.'" Bowen, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing* Mathews v. Eldridge, 424 U.S. 319, 336 (1976)); see also McCullen v. Apfel, 2000 U.S. Dist. LEXIS 19994 at *21 (E.D. Penn. 2000) (*citing* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.1505, 404.1520).

In this case, the ALJ made a number of findings regarding plaintiff's severe impairments. These include: degenerative disk disease of the lumbar spine with mild scoliosis, affective disorder, anxiety disorder and personality disorder (Tr. 37). Plaintiff points out, however, that the plaintiff also presented evidence of piriformis syndrome (ECF No. 20, pg. 8), which plaintiff

1 describes as a neuritis of the proximal sciatic nerve (id.). (See Tr. 744, 773.) In his written

2 evaluation at step-two, the ALJ failed to analyze plaintiff's piriformis syndrome. This was legal

3 error. See Smolen, supra, 80 F.3d at 1290. In addition, it appears that the ALJ also failed to

4 consider plaintiff's subjective symptom testimony when making the severity determination. See

5 id.

6 Plaintiff also received a diagnosis for trochanteric bursitis of the left hip (see Tr .744,

7 769, 773, 824, 938). The ALJ concluded that plaintiff's bursitis "caused only transient and mild

8 symptoms and limitations" which were controlled by treatment. Therefore, he concluded that

9 her bursitis was not a severe medically determinable impairment (Tr. 37-38).

10 This conclusion is not supported by the medical evidence in the record. The medical

11 evidence indicates that plaintiff limped, walked with an antalgic gait, and experienced give-way

12 weakness (see, e.g. Tr. 744, 768, 938). While these symptoms also may be consistent with

13 sciatica, as plaintiff points out, the symptoms associated with sciatica also can be associated with

14 piriformis syndrome and trochanteric bursitis (ECF No. 20, p. 8, note 3). The ALJ failed to

15 distinguish whether the "severe impairments" were the result of sciatica, piriformis syndrome, or

16 left hip bursitis. Further, there is no substantial evidence in the record to support a finding that

17 her impairments resulting from piriformis syndrome or bursitis were any more or less severe than

18 her impairments resulting from sciatica (see, e.g., Tr. 773 (plaintiff diagnosed with chronic pain,

19 reported as "secondary to left hip bursitis and piriformis syndrome"); Tr. 824 ("left trochanteric

20 bursitis, requiring physical therapy and cortisone shots")). In failing to distinguish these

21 impairments, any evaluation of residual functional capacity at step-four is suspect.

22 Although defendant points out that a failure to list an impairment at step-two is harmless

23 if the ALJ analyzes the impairment's affects at step-four (see ECF No. 21, pp. 8-9) *citing* Lewis

24

v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)), the Lewis case is distinguishable. In Lewis, the ALJ neglected to list bursitis at step-two, but then specifically referred to plaintiff's bursitis at step-four and evaluated the symptoms related to bursitis in determining plaintiff's residual functional capacity. Id. at 911. Here, while the ALJ may have referred to some of the symptoms plaintiff suffered as a result of bursitis and piriformis syndrome, he did not specifically refer to those conditions and how they may relate to plaintiff's residual functional capacity. Although some of the symptoms may be the same symptoms plaintiff suffers from as a result of her sciatica, the ALJ did not reach that conclusion, and in the absence of substantial medical evidence, this Court cannot reach that conclusion either. See Bray, supra, 554 F.3d at 1226-27.

Therefore, because the ALJ failed to mention piriformis syndrome at all at step-two and failed to analyze the affect on plaintiff's residual functional capacity of her left trochanteric bursitis, as compared to sciatica, this case should be remanded for further findings.

2.  The ALJ improperly evaluated the medical evidence.

Plaintiff alleges that the ALJ improperly evaluated the medical evidence provided by Minhuin Ryan, M.D. and Scott Alvord, Psy.D. Dr. Ryan was plaintiff's treating physician from January 2007 to May 2008. Dr. Alvord was a consulting examining psychologist who diagnosed plaintiff with PTSD.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing*

Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (*citing* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

Dr. Ryan. Dr. Ryan treated plaintiff from January 2007 to May of 2008. In January of 2008, Dr. Ryan opined that plaintiff was restricted from lifting more than ten pounds (Tr. 280, 851). In April of 2008, Dr. Ryan prepared a DDS worksheet stating that plaintiff was restricted from lifting more than five pounds, from sitting, standing or walking more than thirty minutes, and from bending or turning at the waist (Tr. 389). Dr. Ryan again opined in May of 2008 that plaintiff needed to avoid lifting more than ten pounds because of her chronic sciatica (Tr. 849).

The ALJ gave these opinions very little weight (Tr. 44). Instead, the ALJ concluded that plaintiff was capable of performing her past relevant work as a pizza delivery driver and that she could walk three to five hours a day, stand one to two hours a day, sit for two to three hours a day, and frequently lift ten pounds, increasing to the heaviest weight of twenty pounds (Tr. 47).

The ALJ discounted Dr. Ryan's functional assessment, which contradicted the ALJ's conclusion (Tr. 44). The ALJ stated:

> The undersigned accords Dr. Ryan's opinion very little weight as they are brief, conclusory, and inadequately supported by clinical findings or the

1      record as a whole. Additionally, Dr. Ryan's records contain multiple
       inconsistent statements. For example, in October of 2007, Dr. Ryan noted that
2      physical therapy continued to help significantly with claimant's back pain
       (Ex. 2F/49/53), however in November of 2007, he noted claimant had gone to
3      physical therapy, but had not experienced improvement (Ex. 2F/33).

4
        As noted by plaintiff, Dr. Ryan's letters regarding plaintiff's limitations were brief
5
because the DDS worksheet asked for brief responses. Nevertheless, the diagnosis supporting
6
those conclusions was thoroughly detailed in Dr. Ryan's treatment notes (see, e.g., Tr. 280, 316,
7
357). Also, although Dr. Ryan did note some improvement through physical therapy, this
8
improvement was short lived and pain increased between physical therapy sessions (Tr. 312-13).
9
The inconsistency noted by the ALJ is no inconsistency at all, when considered in light of the
10
record as a whole.
11
        Although defendant points to reports by Dr. Matthew Gambee, M.D., and Dr. John L.
12
Hart, D.O., neither of these health care providers performed any functional assessment. For
13
instance, although Dr. Gambee performed an objective examination, which showed "normal
14
strength in all muscle groups," he nevertheless concluded that plaintiff was suffering from
15
chronic mechanical low back pain symptoms, and gave no conclusions regarding her functional
16
limitations related to those symptoms (Tr. 311). Similarly, Dr. Hart noted that plaintiff had
17
mechanical low back pain and poor muscle tone, ligamentous tightness in the lumbar spine (Tr.
18
734), but again gave no functional assessment related to these problems.
19
        The only other functional assessment referenced in the record was performed by DDS
20
non-examining evaluators (see Tr. 43, 374-81; see also 719). This assessment was similarly
21
"brief and conclusory" and concluded that plaintiff could occasionally lift 20 pounds, frequently
22
lift 10 pounds, sit for 6 to 8 hours a day, and stand for about 6 hours a day (Tr. 375). Therefore,
23

24

the ALJ gave "great weight" to this functional assessment by non-examining evaluators (Tr. 43) and "very little weight" to the functional assessment by treating physician Dr. Ryan (Tr. 44).

In general, more weight should be given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. Lester, supra, 81 F.3d at 830 (*citing* Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, supra, 81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. Lester, supra, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan, supra, 242 F.3d at 1149 (*citing* Magallanes, supra, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." Van Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* Lester, supra, 81 F.3d at 831).

Here, the initial DDS report relied on by the ALJ was based on a records review and not a physical examination (Tr. 374). It was filled out by "Tammy Roller", without any medical consultant's code, so it is unclear whether the examiner is a physician (Tr. 381). Ms. Roller specifically noted that she did not review a treating or examining source statement regarding the claimant's physical capacities in the file (Tr. 380). Therefore, it is not likely that she even considered the functional capacities listed by plaintiff's treating physician, Dr. Ryan. This conclusion is buttressed by the fact that Ms. Roller referenced plaintiff's limitation on lifting as a self-reported limitation as opposed to one that was recommended by a treating physician (see Tr.

381). This cannot be considered "specific, *legitimate* reasons that are supported by substantial evidence in the record." See Van Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* Lester, supra, 81 F.3d at 831). Although the functional assessment by Ms. Roller was affirmed as written by a medical doctor, this DDS evaluator similarly was a non-examining physician (see Tr. 719).

In summary, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Ryan's physical assessment. See Van Nguyen, supra, 100 F.3d at 1466. Therefore, the matter should be remanded for further consideration. See id.

Dr. Alvord. Scott T. Alvord, Psy.D., provided a consulting evaluation. The ALJ stated:

> In March 2008, after his evaluation, Dr. Alvord concluded that claimant's ability to follow instructions and to concentrate were only mildly impaired. Ex. 5F/3. He also concluded her ability to persist and her pace were only mildly impaired. Ex. 5F/3. He concluded that overall, her adaptive functioning was moderately impaired. Ex. 5E/5. Dr. Alvord noted that claimant appeared to be functioning relatively well in the safety of her home and was not judged to present with limitations that impacted her ability to care for her child. Ex. 5F/5. Dr. Alvord opined that it was unlikely she would succeed in an occupational setting outside of the house. Ex. 5E/5. The undersigned accords Dr. Alvord's opinion very little weight, as it is internally inconsistent and not supported by the record. Additionally, it appears Dr. Alvord did not engage in any testing before he rendered his opinion, and therefore, did not test for exaggeration or evidence of malingering. Instead he relied on claimant's self serving claims of dubious truthfulness.

(Tr. 44-45).

The ALJ discussed the contrary opinion of Todd Bowerly, PhD., a clinical psychologist who found evidence suggesting that plaintiff was malingering or exaggerating her symptoms (Tr. 43, 1073). Dr. Bowerly used objective measures to test for the possibility of malingering. Her performance on the MMPI-2 "clearly shows a deliberate attempt to present oneself in an

unfavorable light." He concluded that she was exaggerating her symptoms. Nevertheless, he also concluded:

> Hence, while diagnosis included PTSD and/or malingering are both possible, no definitive diagnosis can be made at this time due to a lack of reliable information.

Arguably, the ALJ provided specific and legitimate reasons for choosing Dr. Bowerly's conclusions over Dr. Alvord's conclusion. Nevertheless, because of the ALJ's failure to properly consider the other medical and lay evidence in the record, this Court concludes that the ALJ should reevaluate the entire record on remand, including the conclusions noted above.

### 3. The ALJ failed to give legally sufficient reasons for rejecting lay witness evidence.

As noted above, because the ALJ had improperly evaluated the medical evidence, the ALJ's conclusions regarding lay testimony must also be called into question because they rely, in part, on the ALJ's evaluation of "the record as a whole."

For instance, the ALJ discounted the evidence provided by Lynn Canton, PA-C, who treated plaintiff for six months and submitted a letter describing plaintiff's limitations (Tr. 842). Ms. Canton concluded that plaintiff suffered from chronic pain and PTSD and required daily assistance with child care, cooking and household tasks (id.). The ALJ discounted Ms. Canton's opinion because it was "brief, conclusory, and inadequately supported by clinical findings or the record as a whole." (Tr. 45.) He noted that Ms. Canton is not a medical source. Nevertheless, the ALJ must give germane reasons for rejecting such evidence. See Bruce, supra, 557 F.3d at 1115.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," see 20 C.F.R. §

1   404.1513 (a), there are "other sources," such as friends and family members, who are defined as

2   "other non-medical sources," see 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse

3   practitioners and naturopaths, who are considered other medical sources, see 20 C.F.R. §

4   404.1513 (d)(1). See also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir.

5   2010) (*citing* 20 C.F.R. § 404.1513(a), (d), (d)(3)). An ALJ may disregard opinion evidence

6   provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ

7   'gives reasons germane to each witness for doing so." Turner, supra, 613 F.3d at 1224 (*citing*

8   Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)); see also Van Nguyen v. Chater, 100 F.3d

9   1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an

10   ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v.

11   Commissioner, Social Security Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing*

12   Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

13       Recently, the Ninth Circuit characterized lay witness testimony as "competent evidence,"

14   again concluding that in order for such evidence to be disregarded, "the ALJ must provide

15   'reasons that are germane to each witness.'" Bruce, supra, 557 F.3d at 1115 (*quoting* Van

16   Nguyen, supra, 100 F.3d at 1467).

17       In this recent Ninth Circuit case, the court noted that an ALJ may not discredit "lay

18   testimony as not supported by medical evidence in the record." Bruce, supra., 557 F.3d at 1116

19   (*citing* Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996)).

20       That is exactly what the ALJ did, here. Although the letter cited by the ALJ was brief

21   and conclusory, Ms. Canton also was plaintiff's primary treatment provider from April to

22   November 2009. There are numerous references in the medical record that outline Ms. Canton's

23   opportunity to perform objective testing, (e.g. Tr. 919-22), review studies and diagnostic tests,

24

(e.g., Tr. 919-22, 979-982) and review assessments by other medical sources (e.g., Tr. 1031-32). The letter provided the conclusion based on a history of treatment. The ALJ's dismissive conclusion that Ms. Canton's conclusions were "brief, conclusory, and inadequately supported by clinical findings or the record as a whole" (Tr. 45) is simply not adequate or supported by substantial evidence in the record. Therefore, this conclusion also should be re-examined on remand. See Bayliss, supra, 427 F.3d at 1214 n.1.

The lay testimony provided by plaintiff's grandmother, father and boyfriend was also discounted by the ALJ for a variety of reasons. Because this matter should be reversed and remanded for the reasons stated above, the ALJ should reevaluate this lay testimony in light of reevaluation of the medical and other lay evidence.

The Court notes, however, that the ALJ continued to discount lay opinion testimony because they lacked complete information concerning "claimant's functional capacity" or lacked "vocational expertise." These observations are at odds with the Ninth Circuit's instructions regarding the consideration of lay testimony. In Bruce, supra, 557 F.3d at 1116, the court held that "a lay person[], though not a vocational or medical expert, was not disqualified from rendering an opinion as to how her husband's condition affects his ability to perform basic work activities." (*Citing* 20 C.F.R. § 404.1513(d)(4)).

Furthermore, the ALJ rejected the testimony of plaintiff's boyfriend, Joshua Anthony Dollar, because he may receive financial benefit from an award to plaintiff (Tr. 42).

Testimony from "other non-medical sources," such as friends and family members, see 20 C.F.R. § 404.1513 (d)(4), may not be disregarded simply because of their relationship to the claimant or because of any potential financial interest in the claimant's disability benefits. Valentine v. Comm'r SSA, 574 F.3d 685, 694 (9th Cir. 2009). In addition, according to the Ninth

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 16

Circuit, absent "evidence that a specific [lay witness] exaggerated a claimant's symptoms *in order* to get access to his disability benefits," an ALJ may not reject that witnesses' testimony with a general finding that the witness is "an 'interested party' in the abstract." Id.

Therefore, on remand, the ALJ should take into consideration these Ninth Circuit holdings when evaluating the lay testimony of these witnesses.

CONCLUSION

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the administration for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on January 27**,** 2012, as noted in the caption.

Dated this 3rd day of January, 2012.

J. Richard Creatura
United States Magistrate Judge